IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES F. OUTLAW,<br><br>　　　Plaintiff,<br><br>　v.<br><br>JOHN. M. McHUGH, Secretary,<br>Department of the Army, Agency;<br>DOES 1-50,<br><br>　　　Defendants. | Civ. No. 10-00630 ACK-RLP |

# ORDER DENYING THE ARMY'S MOTION TO DISMISS AND GRANTING OUTLAW LEAVE TO AMEND THE COMPLAINT

## BACKGROUND[1]

On October 28, 2010, Plaintiff James F. Outlaw ("Outlaw") filed a complaint in this Court ("Complaint") alleging that the United States Army ("Army") had breached the Negotiated Settlement Agreement ("NSA") that resolved Outlaw's Equal Employment Opportunity ("EEO") complaints against the Army. Doc. No. 1. Pursuant to the NSA, which was executed on April 5, 2007, Outlaw withdrew with prejudice his consolidated EEO complaints in exchange for, among other things, (1) $50,000 and (2) re-assignment to a GS-14 Liaison Officer position at Schofield

---

[1] The facts as recited in this Order are for the purpose of disposing of the instant motion, and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Barracks, Hawai'i.  Compl. ¶ 6, Ex. 1 at 1, 3.[2/]  Although Outlaw was physically transferred to Hawai'i, he was considered to be working out of Yuma Proving Ground, Arizona, where he had been working before entering into the NSA.  Id. ¶ 7, Ex. 3 at 3.

On October 1, 2009, the Army directed Outlaw to report for duty, physically, in Yuma, Arizona.  Id. ¶ 10, Ex. 2.  Outlaw notified the Army that he considered this to be a breach of the NSA; on November 20, 2009, however, the Army concluded Outlaw's physical re-assignment complied with the NSA.  Id. ¶ 10-12, Ex. 2, Ex. 3 at 1-2.  Outlaw subsequently filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 13, Ex. 2.

On April 23, 2010, the EEOC found that the Army had breached the NSA by directing Outlaw to physically return to Arizona.  Id. ¶ 14, Ex. 2 at 2-3.  The EEOC also found, however, that Outlaw's request for specific performance could not be granted because the Army had reorganized.  Id. ¶ 14, Ex. 3 at 3.  The EEOC ordered that Outlaw "either return[] the benefits conferred pursuant to the [NSA] and reinstate the [EEO]

---

[2/] Outlaw attached four exhibits to the Complaint, and these exhibits are incorporated into the Complaint itself.  See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Lehn v. Holmes, 364 F.3d 862, 872 (7th Cir. 2004) (finding that a letter attached to a complaint was incorporated into the complaint for purposes of ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

complaint, or keep[] the benefits and allow[] the April 5, 2007 [NSA] to stand." Id. Ex. 3 at 3. Outlaw and the Army each requested reconsideration, but on July 27, 2010, the EEOC denied these requests and affirmed its prior decision. Id. Ex. 4.

Outlaw filed this lawsuit in October 2010, and on January 12, 2011, the Army moved to dismiss ("Motion") Outlaw's Complaint for lack of subject matter jurisdiction. Doc. No. 5. Outlaw failed to timely file an opposition to the Motion. Consequently, the Court informed Outlaw on March 23, 2011, that his opposition memorandum had been due the previous week. Although Outlaw stated that he would file an opposition as soon as possible, he did not file an opposition prior to the Court's April 4, 2011 hearing on the Motion.

At the April 4, 2011 hearing, Outlaw represented that he was in the process of retaining counsel. Notwithstanding Outlaw's dilatoriness, the Court allowed Outlaw an additional ten days to file an opposition to the Motion. The Court allowed the Army to file a reply within three days of Outlaw's filing. The Court instructed both parties to address (1) whether the Court could properly transfer the Complaint to the Court of Federal Claims and (2) whether dismissal without prejudice would be inappropriate on the ground that Outlaw's claim, if dismissed and re-filed in the Court of Federal Claims, would be time-barred.

Outlaw filed an opposition memorandum on April 18, 2011, and the Army filed a reply on April 20, 2011. Doc. Nos. 13, 15.

**LEGAL STANDARDS**

**I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam).

"Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (internal citation omitted).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a

motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987). When ruling on a jurisdictional motion involving factual issues that also go to the merits, the moving party "'should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Casumpang v. Int'l Longshoremen's & Warehousemen's Union, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation omitted).

**II.       Special Considerations for Pro Se Litigants**

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987). When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted). Moreover, "[p]ro se litigants must follow

5

the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

Before a district court may dismiss a pro se complaint, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Eldridge v. Block, 832 F.2d 1132, 1136 (9th Cir. 1987). The court may dismiss a pro se complaint instead of granting leave to amend where amendment would be futile. See Cato, 70 F.3d at 1106; Eldridge, 832 F.2d at 1135-36.

## **DISCUSSION**

The Army argues that the Court lacks subject matter jurisdiction over the Complaint because Outlaw fails to establish that the United States has waived sovereign immunity with regard to Outlaw's breach of settlement agreement claim. Although the Court agrees with the Army, it grants Outlaw leave to amend the Complaint so that the Court may transfer the amended complaint to the Court of Federal Claims, where Outlaw's claim appears to belong. Transfer is preferable to dismissal without prejudice because it would avoid a potential statute of limitations problem.

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature." FDIC v. Meyer, 510 US 471 475 (1994) (internal citations omitted). A waiver of sovereign immunity must be unequivocal and cannot be implied. United States v. Mitchell, 445 U.S. 535, 538 (1980). To avoid dismissal, Outlaw bears the burden of establishing an unequivocal waiver of immunity. See Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir.1983); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) ("Enforcement of [a] settlement agreement . . . whether through award of damages or decree of specific performance . . . requires its own basis for jurisdiction.").

Outlaw's Complaint asserts that the Court "has jurisdiction over this matter under Federal Question Jurisdiction, 28 U.S.C. § 1331, because this Complaint raises issues under Title VII, 42 U.S.C. § 2000e et. seq. and an interpretation of a contract to which [the] federal government is a party, and more specifically under 29 C.F.R. § 1614.405 and 1614.408." Compl. ¶ 18. As the Army argues, however, "[t]he Ninth Circuit has quite recently held that Title VII's waiver of

sovereign immunity does not extend to suits to enforce predetermination settlement agreements." Motion at 7.[3]

In <u>Munoz v. Mabus</u>, 630 F.3d 856 (9th Cir. 2010), the plaintiff, Munoz, filed an EEO complaint alleging that his employer, the Navy, had discriminated against him. <u>Id.</u> at 858-59. Instead of having his claim processed through EEOC's review mechanism, Munoz and the Navy entered into a settlement agreement. <u>Id.</u> at 859. Pursuant to this agreement, the Navy would provide Munoz with career-enhancing training and Munoz would withdraw his EEO complaint. <u>Id.</u> After Munoz was denied a specific type of training, he alleged that the Navy had breached the settlement agreement. <u>Id.</u> Munoz lost that claim and a related claim; on appeal, the EEOC Office of Federal Operations affirmed, finding that the Navy had not breached the agreement. <u>Id.</u> at 859-60. Munoz appealed to this Court, which found that Title VII conferred jurisdiction (but dismissed Munoz's claims on the merits). <u>Id.</u> at 860; <u>see</u> <u>Munoz v. England</u>, 557 F. Supp. 2d. 1145 (D. Haw. 2008).

---

[3] The NSA is a "predetermination settlement agreement." In other words, it is "an agreement negotiated and entered into prior to formal investigation, determination of reasonable cause, and conciliation attempt by the EEOC. <u>See</u> 29 C.F.R. §§ 1601.20(a), 1614.603; <u>cf.</u> 42 U.S.C. § 2000e-5(b) (describing the process for arriving at post-determination voluntary settlement, known as 'conciliation agreements')." <u>Munoz v. Mabus</u>, 630 F.3d 856, 860 n.2 (9th Cir. 2010); <u>see</u> Compl. Ex. 1.

The Ninth Circuit reversed. Munoz, 630 F.3d at 860-61. Deciding an issue of first impression, it held that "Congress' waiver of sovereign immunity under Title VII does not extend to suits to enforce settlement agreements entered into without genuine investigation, reasonable cause determination, and conciliation efforts by the EEOC." Id. After a lengthy analysis of Title VII's regulations and Tucker Act jurisdiction, 28 U.S.C. § 1491, Munoz found that "Congress, while encouraging resolution of Title VII complaints through predetermination settlement agreements, has nonetheless not provided for enforcement of such agreements in federal court. The plain meaning of the text, the overarching regulatory framework, and the long-held prudential interest in narrowly construing waivers of sovereign immunity all compel this conclusion." Id. at 846 (internal citations and footnote omitted).

The Court agrees with the Army that Outlaw's allegations in the instant matter are legally and factually similar to the claims in Munoz. Motion at 8. "Like the Plaintiff in Munoz, Outlaw is attempting to litigate a breach of a predetermination settlement agreement in federal district court, ostensibly under Title VII's waiver of sovereign immunity, against the federal government." Id. Because Title VII does not confer jurisdiction over Outlaw's claim, however, and Outlaw has

not alleged any other basis for jurisdiction, the Court finds that it lacks subject matter jurisdiction over the claim.[4/]

Outlaw requests that if this Court finds that it lacks subject matter jurisdiction, the Court transfer the Complaint to the Court of Federal Claims rather than dismiss it. Opp'n at 1-2. As discussed below, the Court finds that transfer, if proper, is preferable because it would avoid a potential statute of limitations problem. See Nosie v. Ass'n of Flight Attendants-CWA, AFL-CIO, Civ. No. 10-00062 ACK-LEK, 2010 WL 3767300, at *4 (D. Haw. Sep. 20, 2010) ("The courts have long held that before a court dismisses an action without prejudice, it should inquire as to whether the statute of limitations has run on the plaintiff's claims."). Under the federal transfer statute, when a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such [action] to any other such court in which the [action] could have been brought at the time it was filed." 28 U.S.C. § 1631. When an action is transferred, it proceeds as if it were filed in the transferee

---

[4/] Although the Complaint does not plead a specific amount of damages, Outlaw appears to seek more than $10,000, thus depriving this Court of concurrent jurisdiction with the Court of Federal Claims under the Little Tucker Act. See 28 U.S.C. § 1346(a)(2); Greenhill v. Spellings, 482 F.3d 569, 573 (D.C. Cir. 2007) ("If Greenhill explicitly or in essence seeks money damages in excess of $10,000, jurisdiction rests exclusively with the Court of Federal Claims.").

10

court on the date upon which it was actually filed in the original court. Id.

For transfer to the Court of Federal Claims to be proper under § 1631, this Court must find that the Court of Federal Claims would have jurisdiction (1) to enforce a Title VII settlement agreement like the NSA and (2) to grant Outlaw the relief he seeks.

First, pursuant to the Tucker Act, the Court of Federal Claims appears to have jurisdiction to enforce a Title VII settlement agreement like the NSA. See 28 U.S.C. § 1491; Munoz, 630 F.3d at 864 ("Because Munoz's breach of settlement agreement claim is essentially a contract action against the federal government whose resolution requires no interpretation of Title VII itself, his claim . . . belongs, if anywhere, in the Court of Federal Claims."); Johnson v. EEOC, No. C09-1867-JCC, 2011 WL 814320, at *2 (W.D. Wash. Mar. 2, 2011). "The Tucker Act recognizes explicitly that express or implied contracts with the United States can provide the basis for jurisdiction in [the Court of Federal Claims]." Taylor v. United States, 73 Fed. Cl. 532, 545 (2006) (holding that the Court of Federal Claims possesses jurisdiction to enforce Title VII settlement agreements); see also Mastrolia v. United States, 91 Fed. Cl. 369, 380 (2010) (same); Westover v. United States, 71 Fed. Cl. 635, 638-39 (2006) (same).

The Court recognizes that some Court of Federal Claims cases have diverged from the precedent cited above, and suggest that Outlaw may not be able to establish jurisdiction in that court. In Holmes v. United States, 92 Fed. Cl. 311 (2010), for example, the Court of Federal Claims found that it lacked subject matter jurisdiction over a breach of Title VII settlement agreement claim because the plaintiff had not identified a money-mandating source in the agreement. Id. at 314-318. According to Holmes, for Tucker Act jurisdiction to exist, the language of a Title VII settlement agreement "must support a 'fair inference' that money damages are payable for breach." Id. at 318. Holmes rejected the argument that "money is the default remedy for breach of contract and that the default remedy of money damages extends to contracts settling Title VII employment discrimination suits," noting that a "breach does not give rise to money damages for default in every contract with the government." Id. at 317. Compare Mastrolia, 91 Fed. Cl. at 380-81 ("Where a contract-like a settlement agreement-is breached, the law presumes that a damages remedy will be available. . . . [T]here is 'no generic requirement that contracts must include specific language indicating that damages will be paid upon a breach." (internal citation and ellipses omitted)); Taylor, 73 Fed. Cl. at 545 ("The contract itself does not need to be money-mandating because money

damages are the default remedy for a breach of contract." (collecting cases)).

Under Holmes, Outlaw would face an uphill battle establishing jurisdiction in the Court of Federal Claims. In particular, it is difficult to see how the NSA could support a fair inference that money damages are available to Outlaw. Indeed, as the Army points out, the NSA states that Outlaw's "sole remedy for an alleged agency breach of [the NSA] is to request that the terms of the [NSA] allegedly breached be implemented." Compl. Ex. 1 at ¶ 8 (emphasis added); Reply at 5; see also Buehler v. United States, No. 06-382 C, 2007 WL 5161793, at * 2 (Fed. Cl. May 16, 2007) (finding no subject matter jurisdiction to enforce a Title VII settlement agreement because the agreement did "not mandate the payment of monetary compensation" in the event of breach, but provided that "the plaintiff may either request compliance with the agreement or seek reinstatement of her EEOC complaint"); Phillips v. United States, 77 Fed. Cl. 513, 517-20 (2007); cf. Speed v. United States, 97 Fed. Cl. 58, 68 n.12 (2011) (noting that "an explicit provision for non-monetary breach remedies may displace or rebut the presumption of damages in some cases").

Nonetheless, the Court follows Munoz's suggestion, which is supported by at least some Court of Federal Claims precedent, and presumes that the Court of Federal claims would

13

have jurisdiction to enforce a Title VII settlement agreement like the NSA.[5]

Second, the Court agrees with the Army that it would be improper to transfer the Complaint - in its current form - to the

---

[5] Notably, in <u>Greenhill v. United States</u>, 81 Fed. Cl. 786 (2008), the Court of Federal Claims held that "[t]he presumption that money damages are the default remedy for breach of contract is not overcome simply because a contract provides for alternate remedies." <u>Id.</u> at 791. <u>Greenhill</u> found that it had jurisdiction to enforce a Title VII settlement agreement even though that agreement provided:

> "If the Complainant believes that the Department has failed to comply with the terms of this Agreement, she must notify the Department's EEO Director in writing within thirty (30) calendar days of the date Complainant knew or should have known of the alleged noncompliance. The claim will be processed as set forth in 29 C.F.R. 1614.504 and may result in: compliance by the Department; rejection of the claim; an EEOC order that the Department comply with the Agreement; or reinstatement of the above-captioned EEO complaint for further processing from the point processing ceased under the terms of this Agreement."

<u>Id.</u> at 788. The court reasoned as follows:

> The fact that the settlement agreement states that the complainant "<u>must</u> notify the Department's EEO Director in writing within thirty (30) calendar days" (emphasis added) does not mean that notification to the EEO Director is the <u>only</u> means of redressing an alleged breach; rather, the requirement to notify the EEO Director is obligatory only <u>if</u> a complainant chooses to pursue the administrative process. The language of the settlement agreement does not divest plaintiff of the right to pursue a claim for damages in this court.

<u>Id.</u> at 792 (emphasis in original). Subsequent Court of Federal Claims cases have relied on <u>Greenhill</u> to find jurisdiction to enforce Title VII settlement agreements arguably analogous to Outlaw's NSA. <u>See, e.g.</u>, <u>Mastrolia</u>, 91 Fed. Cl. at 380-81; <u>Patterson v. United States</u>, 84 Fed. Cl. 583-85 (2008); <u>cf.</u> Compl. Ex. 1 at ¶ 8.

Court of Federal Claims because that court likely does not have jurisdiction to grant Outlaw the relief he now requests. See Reply at 3-6. Although the Complaint's prayer for relief requests "general, compensatory and incidental damages," the Complaint primarily seeks specific performance of the NSA. See Compl. at 4-6. The Court of Federal Claims, however, "has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (en banc) (citation omitted).[6]

That said, it is possible for Outlaw to amend the Complaint to seek relief that the Court of Federal Claims would have the power to grant. In particular, Outlaw could file an amended complaint that requests (1) monetary damages alone or (2) monetary damages and non-monetary relief that is related to and

---

[6] The Army also argues that transfer would be improper because under 28 U.S.C. § 1500, the Court of Federal Claims would lack jurisdiction over the transferred action. Reply at 6-9. This argument is unpersuasive because this Court would be transferring all of the claims in Outlaw's action. See d'Abrera v. United States, 78 Fed. Cl. 51, 57 (2007) ("Section 1500 is not implicated . . . when all of the claims in an action are transferred to the Court of Federal Claims pursuant to Section 1631 . . . .") (emphasis in original); see also United States v. Tohono O'Odham Nation, 563 U.S. --, 2011 WL 1543329, at *3-4 (2011) (stating that "[t]he question to be resolved [was] what it mean[t] for two suits to be 'for or in respect to' the same claim" under § 1500 and noting that "Congress first enacted the jurisdictional bar now codified in § 1500 to curb duplicate lawsuits").

15

dependent upon the money judgment sought. See id. at 580-81.[7]
If Outlaw were to file such an amended complaint, this Court could properly transfer that complaint to the Court of Federal Claims and avoid a potential statute of limitations bar. As the Army acknowledges, "[i]t is not entirely clear whether the applicable statute of limitations is the general six-year statute of limitations of 28 U.S.C. § 2501, or the 90-day statute of limitations for appeals of EEOC decisions required by the Title VII regulation, 29 C.F.R. § 1614.407." Reply at 9. And as the Army further notes, if the 90-day statute of limitations were to apply, and the Court were to dismiss rather than transfer Outlaw's claim, Outlaw would be barred from asserting his claim in any court. Id. at 11-12.

In short, the Court finds that transfer is proper and would be "in the interest of justice," because it would ensure that Outlaw is not barred by the statute of limitations from

---

[7] As this Order should make clear, the gravamen of Outlaw's amended complaint must not be another request to remain in Hawai'i; i.e., a request for specific performance of the NSA. As discussed below, the Court urges Outlaw to obtain the assistance of counsel in pursuing this matter further. Outlaw's counsel, or Outlaw, should consult caselaw analyzing the Caldera standard in drafting the amended complaint. The Court of Federal Claims's jurisdiction to employ equitable powers is limited. See, e.g., Legal Aid Soc. v. New York, 92 Fed. Cl. 285, 301 (2010) (noting that the Court of Federal Claims may use its "incidental equitable powers" "'to aid in rendering [a] money judgment,' such as in cases where an audit or some other procedure is necessary to arrive at a money judgment." (quoting Pauley Petroleum Inc. v. United States, 591 F.2d 1308, 1315 (Ct. Cl. 1979))).

16

having his day in court. See Taylor, 73 Fed. Cl. at 547.[8/]  For this reason, and because the Court must afford Outlaw the opportunity to amend his pro se complaint as long as such amendment would not be futile, the Court grants Outlaw leave to amend.  See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); Eldridge v. Block, 832 F.2d 1132, 1135-36 (9th Cir. 1987). However, echoing Johnson v. EEOC, the Court emphasizes that "[t]he jurisdictional and remedial issues in this case are complex," and the Court urges Outlaw "to seek the assistance of legal counsel to further proceed."  2011 WL 814320, at *2.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Army's Motion to Dismiss and GRANTS Outlaw leave to amend the Complaint. By June 1, 2011, Outlaw must file an amended complaint that this Court may properly transfer to the Court of Federal Claims.  As discussed above, Outlaw's amended complaint must seek relief that the Court of Federal Claims would have the power to grant.

If Outlaw does not file an amended complaint by June 1, 2011, the Court will dismiss this lawsuit without prejudice.

---

[8/] This is not to suggest that the Court of Federal Claims would ultimately reach the merits of Outlaw's claim(s). Notwithstanding this Court's transfer of Outlaw's amended complaint, the Court of Federal Claims would have an independent obligation to examine its own jurisdiction.  See Taylor, 73 Fed. Cl. at 538.

IT IS SO ORDERED.

Dated: Honolulu, Hawai'i, April 29, 2011.



_____
Alan C. Kay
Sr. United States District Judge

Outlaw v. McHugh, et al., Civ. No. 10-00630 ACK-RLP, Order Denying the Army's Motion to Dismiss and Granting Outlaw Leave to Amend the Complaint.

18